UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Darren Kolar,

                Plaintiff,

    v.

Unified Western Grocers, Inc.,

                Defendant.

No. CV 04-1593-MO

OPINION AND ORDER

**MOSMAN, J.**,


This case concerns the respective obligations of the employer and the employee under the Oregon Family Leave Act ("OFLA"). Plaintiff Darin Kolar has three sons, and before his termination in February 2004, he had worked for the defendant, Unified Western Grocer's Inc. ("Unified"), for nearly 12 years. During at least the last two years of his employment, Mr. Kolar took a significant amount of time off work claiming he needed to care for his children when they were sick or had other health problems. Mr. Kolar's repeated requests for leave and sometimes dishonest use of family leave caused a strain in the employment relationship, and ultimately, Unified fired Mr. Kolar for excessive absenteeism, dishonesty, and failure to follow proper procedures in requesting family leave. Mr. Kolar filed suit claiming that (1) Unified engaged in unlawful employment practices by violating OFLA, Or. Rev. Stat. § 659A.885, and (2) he was unlawfully terminated in violation of important public policy. Unified moves for summary judgment on both claims, asserting that its actions complied with OFLA and that Mr. Kolar's

PAGE 1 - OPINION AND ORDER

termination was warranted. Unified also seeks attorney's fees if it prevails on its motion. Or. Rev. Stat. § 659A.885(1). For the following reasons, Unified's motion for summary judgment is granted, and its request for attorney's fees is denied.

## I. The Oregon Family Leave Act[1]

OFLA provides that covered employees are entitled to take up to "12 weeks of family leave within any one-year period." Or. Rev. Stat. § 659A.162(1). "Family leave" includes time needed "[t]o care for a family member with a serious health condition," and time needed "[t]o care for a child . . . who is suffering from an illness, injury or condition that is not a serious health condition but that requires home care." *Id.* at §§ 659A.150(3); 659A.159(1)(b) and (d). For ease of reference, these will be referred to as "serious-condition leave" and "sick-child leave" respectively.

A.    Serious-Condition Leave

A "serious health condition" includes "[a]n illness, disease or condition that in the medical judgment of the treating health care provider poses an imminent danger of death, is terminal in prognosis with a reasonable probability of death in the near future, or requires constant care." *Id.* at 659A.150(6)(b). The implementing regulations further explain a chronic condition "that requires periodic visits for treatment . . ., continues over a period of time, and may cause episodic rather than a continuing period of incapacity" fits within this definition. Or. Admin. R. 839-009-0210(14)(c)-(e).

When circumstances allow, employers can require employees to provide written notice

---

[1]This statute was amended by 2005 Oregon Laws Ch. 199 (S.B. 238) on June 9, 2005; however, the changes do not appear to affect this motion.

PAGE 2 - OPINION AND ORDER

30 days in advance of taking leave. Or. Rev. Stat. § 659A.165(1) and (2). Where prior notice is not feasible, the employee must give the employer notice shortly after starting leave. *Id.* at § 659A.165(3). An employer can also require medical verification of the serious health condition. § 659A.168(1). And where the employee has to give prior notice, the employer can require the verification be provided at the same time. Otherwise, the verification must be submitted "within 15 days after the employer requests" it. *Id.* Finally, subject to the health care provider's approval, where an employee takes leave to care for a family member with a serious health condition, "the employee shall make a reasonable effort to schedule medical treatment or supervision at times that will minimize disruption of the employer's operations." *Id.* at § 659A.168(3).

B.    Sick-Child Leave

Sick-child leave is available where the child requires "home care," but does not otherwise have a serious health condition. *Id.* at § 659A.159(1)(d); Or. Admin. R. 839-009-0230. However, an employer does not have to provide sick-child leave where "another family member is available to care for the child." Or. Rev. Stat. § 659A.162(5). "Family member" is defined as "the spouse of an employee, the biological, adoptive or foster parent of the employee, a parent-in-law of the employee or a person with whom the employee was or is in a relationship of in loco parentis." *Id.* at § 659A.150(4). The "non-custodial biological parent" of the child is also a family member for purposes of sick-child leave. Or. Admin. R. 839-009-0240(7).

The employer can impose the same notice requirements for sick-child leave as for serious-condition leave; however, an employer can only require medical verification for sick-child leave after the employee has taken such leave on more than three days during the preceding

PAGE 3 - OPINION AND ORDER

leave year. Or. Rev. Stat. § 659A.168; Or. Admin R. 839-009-0260(8) ("If an employee has taken sick child leave on all or any part of three separate days during a leave year, the employer may, at its discretion, require medical verification on the fourth day or subsequent occurrence of sick child leave within that leave year.").

## II. Background

The facts are viewed in the light most favorable to Mr. Kolar, the non-moving party in this case. *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002). Mr. Kolar has three children, Dallas, Grayson, and Logan Kolar. In 2000, Mr. Kolar divorced the children's mother, Cynthia Kolar. From that time on, he had sole custody of the two older children, and Ms. Kolar had custody of Logan. During the time relevant to this case, Mr. Kolar, his ex-wife, and his ex-mother-in-law, all lived near each other.

Mr. Kolar began working for Unified in 1990, and the terms of his employment were governed by a collective bargaining agreement between Unified and the Teamsters. In mid-2003, the employment relationship was troublesome and both parties had several outstanding grievances against each other. Some of Unified's complaints related to Mr. Kolar's excessive and dishonest use of family leave. In June 2003, Mr. Kolar made repeated applications for leave to care for Logan, stating no other family members were available to care for him. Unified later learned this was untrue as Mr. Kolar did not even have custody of Logan at the time. Then, on September 2, Mr. Kolar was absent from work, again claiming he needed to stay home and care for Logan, when Unified discovered that instead, he spent the day in downtown Portland with his cousin.

Unified, Mr. Kolar, and the union ultimately reached a settlement on all the outstanding

PAGE 4 - OPINION AND ORDER

grievances, and on September 3, the parties held an arbitration to go over the final result. As part of this proceeding, the parties agreed Mr. Kolar would receive a "final written warning notice, prior to termination . . . . construed by the Company as a last chance agreement" related to his use of family medical leave. Cassidy Decl., Ex. 5 at 10. The agreement specified: "[Mr. Kolar] is expected to follow all proper guidelines and procedures to obtain authorized absence from work. . . . Failure to improve will result in termination." *Id.,* Ex.6. Mr. Kolar signed the agreement. *Id.*, Ex. 5 at 13. In addition, after the arbitration was over, Unified and union representatives discussed with Mr. Kolar the procedures he needed to follow to properly apply for family leave and Unified's expectations in light of the last chance agreement. Rosenbaum Decl., Ex. 4 at 2. He was specifically told he needed to communicate with Unified concerning his need for family leave and that he needed to be honest in his use of leave.

Unified's leave of absence ("LOA") policy specified that employees are entitled to twelve weeks unpaid leave "calculated by looking backward at the amount of leave taken within the twelve-month period immediately preceding the requested leave." *Id.*, Ex. 2 at 15. The policy also required employees, as provided for in OFLA, to give Unified's human resources ("H.R.") department notice "of the date of commencement and the expected duration of the leave at least 30 days in advance . . . or if the leave is not foreseeable, as soon as practicable." *Id.* at 14. The policy's specific Oregon addendum stated that leave taken under Oregon law "runs concurrently with [federal leave]," *id.* at 19, and that "[e]mployees who use sick child leave on more than three (3) occasions in a 12-month period may be required to provide medical documentation from the child's doctor to verify that the child was ill or required home care for all subsequent uses of sick child leave in the 12-month period." *Id.*

PAGE 5 - OPINION AND ORDER

Several incidents occurring after Mr. Kolar received his last-chance agreement and leading up to his termination are relevant to the pending motion. First, on October 20, a mandatory overtime day, Mr. Kolar left work early, claiming he needed to care for Grayson, who was sick and needed to go to the doctor. He called in the next day for the same reason, saying he was unable to get his son into the doctor the first day. School records show Grayson in attendance both of these days. After Mr. Kolar returned to work, Grayson's doctor sent a note to Unified verifying that Mr. Kolar called the office claiming Grayson was sick and requesting a note for work. But the note also established that Grayson was not examined or treated by the doctor on either day. Again concerned about Mr. Kolar's truthfulness, Unified rejected the note as proper medical verification and issued a corrective discipline stating: "The note indicated that [Mr. Kolar] had not taken his son into the doctor as he stated was necessary." Spiegel Decl., Ex. 3. Unified also reminded Mr. Kolar that failure to improve his conduct would result in termination.

On November 7, Mr. Kolar applied for intermittent medical leave claiming Grayson had a serious health condition and submitted a medical certification from Grayson's doctor stating that since the previous June, Grayson suffered from "Recent Anaphylactoid purpura," and that he needs "periodic routine follow up as well as on as needed basis." *Id.* Ex. 4 at 2. In answer to how much leave Mr. Kolar would need to care for Grayson in light of this condition, the doctor stated: "[d]ifficult to predict – if stays stable, routine labs + tests can be annually + as needed for any concerns." *Id.* at 3.

Three days later, on November 10, Mr. Kolar called his supervisor claiming he needed to take Grayson to the doctor for blood and urine tests. The supervisor told him that he needed to

PAGE 6 - OPINION AND ORDER

contact the H.R. department about this absence and that he should check-in or come into work after the appointment. Mr. Kolar did not follow these instructions, instead taking the entire day off. A doctor's note verified that Grayson had an appointment; however, Unified denied Mr. Kolar's application for family leave finding the appointment was routine and therefore not covered by OFLA.

On November 14, Mr. Kolar again called in saying he needed to stay home and care for Grayson. He told his supervisor that he had already filled out the necessary paperwork, and he did not contact the H.R. department. He did not provide any verification for this specific absence, apparently relying on the serious-condition certification previously submitted. Grayson did not attend school, and he accompanied his father on errands.

Four days later, Unified concluded the medical certification submitted on November 7 was insufficient to establish that Mr. Kolar was entitled to family leave based on Grayson's asserted serious health condition. Unified based this decision in large part on the doctor's statements that any treatment Grayson needed could be scheduled as routine appointments. *Id.* Ex. 6. And because of this decision, Mr. Kolar's absences on November 10th and 14th were deemed unexcused, and he was given a corrective discipline for excessive absenteeism and suspended from work for two and a half days. *Id.* Ex. 7.

On December 5, Mr. Kolar was absent from work claiming he needed to care for one of his sons who was sick.[2] He did not provide any medical documentation for this absence, and on

---

[2]Mr. Kolar's supervisor noted down when he called in that day that he was staying home to take care of Logan; however, Mr. Kolar states he does not remember why he took the day off but that school records and his statement to his supervisor that he already filled out the H.R. paperwork support the conclusion that he was at home caring for Grayson.

December 12, he was given another corrective discipline, based in part on this incident. Spiegel Decl., Ex. 12.

Finally, on January 9, 2004, Mr. Kolar went into work a few hours before his shift started to pick up his paycheck, making no indication he would not be returning for his shift. After he left, police came to the workplace looking for him, and thereafter, Mr. Kolar called his supervisor saying he needed leave to take Dallas to the doctor. Mr. Kolar got a note from the doctor saying Dallas was sick and had an appointment that day, but Unified did not receive it. On January 13 and January 30, Unified sent Mr. Kolar certified letters saying he needed to provide medical verification for the absence.[3] Mr. Kolar claims he did not receive either of the letters, and that until he was suspended on February 11, he believed he had provided proper verification. And upon learning Unified had not received the doctor's note, he resubmitted it, Unified received the note on February 16, but regardless, Mr. Kolar was terminated effective February 17 for "excessive absenteeism and violation of Company policies." Woods-Eliot Decl. in Opp. to M. for Summ. J., Ex. 2. Unified's decision was later upheld by a unanimous Joint Conference Board, which included union representatives.

Mr. Kolar filed suit alleging Unified violated OFLA by failing to (1) provide notice of how it calculates the leave year, (2) provide notice of its medical verification requirement, (3) properly request medical verification, (4) give him sufficient time to provide medical verification

---

[3]Mr. Kolar argues these letters did not say that he needed to provide medical verification. Even construing the facts in his favor, this is in error. The first letter stated: "The company has recently learned that you may have a condition that may qualify for Family Medical Leave, *pending certification from your physician*." Spiegel Decl., Ex. 14 (emphasis added). Likewise, the second letter stated: "At this time you do not qualify for protected Family Medical Leave. This determination was reached, as we did not receive a completed Application for Medical Leave or a Certification from your Health Care Provider." *Id.*, Ex. 15.

PAGE 8 - OPINION AND ORDER

before disciplining him, and (5) post the Bureau of Labor & Industries ("BOLI") Family Leave Act notice in the workplace. He also asserted a wrongful discharge claim against Unified claiming his termination violated important public policy. Unified moved for summary judgment arguing that its actions complied with OFLA's requirements, and that Mr. Kolar was properly disciplined and terminated because he was not entitled to leave for the absences at issue and he violated the terms of the last-chance agreement. Unified also moved for summary judgment on the wrongful termination claim arguing that because its actions were lawful, it did not violate public policy. With the exception of Mr. Kolar's BOLI notice argument, which he abandoned at oral argument, each claim will be addressed in turn.

### III.  Analysis

A.      Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "pointing out" the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). And once it has done so, in order to defeat summary judgment, the non-moving party must set forth "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citation omitted).

PAGE 9 - OPINION AND ORDER

B.    <u>Unlawful Employment Practices Under OFLA</u>

1) **Notice of the Leave Year**

Employees are entitled to 12 weeks family leave in a leave year. OFLA's implementing regulations specify that employers can choose one of four methods for calculating the leave year. Or. Admin. R. 839-009-0120(13). Where an employer fails to elect a specific calculation method, the calendar year applies. *Id.* The "roll-back method" is one of the employer's options, and under this approach, the leave year is the "12-month period measured backward from the date the employee uses any OFLA leave." *Id.*

Unified's LOA policy discusses its employees' rights under the federal Family and Medical Leave Act of 1993 ("FMLA"), and it has an Oregon addendum addressing corresponding rights under OFLA. In the main body of the policy, it provides:

> An eligible employee is entitled to a maximum of twelve (12) weeks of unpaid leave within a twelve-month period. The amount of leave available to an employee at any given time will be calculated *by looking backward at the amount of leave taken within the twelve month period immediately preceding the requested leave.*

Rosenbaum Decl., Ex. 2 at 15 (emphasis added). The Oregon addendum does not select a calculation method; rather, it simply refers to a "12-month period." Mr. Kolar argues this omission means Unified did not select a method for calculating leave taken under OFLA and therefore the calendar year applies. This is in error. The addendum specifies that "leave under OFLA runs concurrently with FMLA in most circumstances." *Id.* at 19. Indeed, the policy establishes that OFLA supplements FMLA. *See id.* ("In addition to the FMLA-covered reasons for a leave of absence, Oregon family leave of up to twelve (12) weeks may be taken" for sick-child leave). Thus, the language and structure of the policy indicate that Unified's leave-year

PAGE 10 - OPINION AND ORDER

selection applies to leave taken under OFLA as well as under FMLA.  And because Unified

posted its LOA policy in the workplace and provided copies of the policy to Mr. Kolar in the

course of disciplining him,  I find there are no materially disputed facts about whether he was

given sufficient notice of Unified's method for calculating the leave year.

    2) **Notice of the Medical Verification Requirement**

    As described above, an employer can require medical verification supporting the need for

family leave.  Or. Rev. Stat. § 659A.168(1).  But first, "[t]he employer must provide the

employee with written notice of any requirement to provide medical verification . . . and the

consequence for failure to do so." *Id.* 839-009-0260(3).  Unified's LOA policy notified

employees of their obligation to provide medical verification.  Regarding serious-condition

leave, the policy provides: "[T]he employee must submit to the [H.R.] Department written

medical certification from a health care provider of the serious health condition. . . . Failure to

provide such certification upon request may result in a denial or delay of leave . . . ."

Rosenbaum Decl., Ex. 2 at 14.  Likewise, the Oregon addendum states: "Employees who use

sick child leave on more than three (3) occasions in a 12-month period may be required to

provide medical documentation from the child's doctor to verify that the child was ill or required

home care for all subsequent uses of sick child leave in the 12-month period." *Id.* at 19.

    Further, there is significant evidence showing Mr. Kolar knew he was required to provide

medical verification.  In December 2002, he received a letter from Unified stating he needed to

provide a doctor's note when taking sick-child leave.  Cassidy Decl., Ex. 9.  He received similar

letters in April and June of 2003.  Mr. Kolar's last-chance agreement also stated that he had to

"follow all proper guidelines and procedures to obtain authorized leave," or he would be fired,

PAGE 11 - OPINION AND ORDER

Cassidy Decl., Ex. 6, and he stated in his deposition he knew, based on this agreement, that he was required to provide medical verification for future claims of sick-child leave. Rosenbaum Decl., Ex. 1 at 12. Unified told him in a disciplinary action dated October 30, 2003, that he needed to follow all proper guidelines and "provide medical certification for all future occurrences of a similar nature." Spiegel Decl., Ex. 3. And finally, a month later, he was reminded in a letter: "You were notified that the Company is requiring you to provide medical certification since you had taken Sick Child Leave on more than three occasions on three separate days in one year." *Id.* Ex. 6. This is more than enough undisputed evidence to conclude that

Mr. Kolar had notice of Unified's medical verification requirement in general, and as applied to him.

3) **Application of the Medical Verification Requirement**

There are two sub-issues here: first, whether Unified acted lawfully in demanding medical verification; and second, whether Unified gave Mr. Kolar sufficient time to provide the requested verification before disciplining him.

a) **Request for verification**

Mr. Kolar's first argument in relation to this issue is that Unified was required to make specific requests each time it required him to produce medical verification, and that Unified acted unlawfully in relying on a standing request for verification, like the one in the last-chance agreement. In support, Mr. Kolar cites OFLA's provision stating that where prior notice of leave is not required, the employee must provide medical verification "within 15 days after the employer requests" it. Or. Rev. Stat. § 659A.168(1). Oregon courts have not interpreted this

PAGE 12 - OPINION AND ORDER

specific provision. However, OFLA is to be construed "to the extent possible in a manner that is consistent with any similar provisions of . . . (FMLA)." *Yeager v. Providence Health Sys. Or.*, 96 P.3d 862, 866 (Or. Ct. App. 2004) (citing Or. Rev. Stat. § 659A.186(2)); *Centennial Sch. Dist. No. 28J v. Or. Bureau of Labor & Indus.*, 10 P.3d 945, 950 (Or. Ct. App. 2000) (same). This same 15-day rule applies under FMLA. 29 C.F.R. § 825.305(b) (where prior notice is not possible, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request)"). And under the federal statute, "[a]n employer must give notice of a requirement for medical certification *each time a certification is required*." *Id.* at § 825.305(a). Thus, by analogy, I conclude OFLA also requires the employer to request medical verification each time it is required.

The facts in this case establish that with the exception of January 9, 2004,[4] Unified made individual requests for verification in relation to each incident. However, the requests were usually made over the phone when Mr. Kolar called in to work saying he would be absent, and Mr. Kolar argues Unified was required to request medical verification in writing. Oregon regulations provide that "[t]he employer must provide the employee with written notice of any *requirement* to provide medical verification." Or. Admin. R. 839-009-0260(3). It is clear this provision applies to broad, policy-level requirements. But that does not mean it also applies to *requests* for verification made to an individual employee. Again, Oregon courts have not addressed this issue, but FMLA has. *See* 29 C.F.R. § 825.301. Federal regulations

---

[4]As indicated above, there is a factual dispute regarding whether Mr. Kolar received Unified's request for medical verification in relation to this absence.

implementing FMLA provide that while employers are required to notify employees of their obligation to provide medical verification "with respect to each employee notice of a need for leave," such notice does not have to be in writing where "the employer handbook or other written documents (if any) describing the employer's leave policies, clearly provided that [verification] . . . would be required. *Id.* at § 825.301(c)(2).

Here, Unified's LOA policy described its requirements for medical verification. In addition, the various disciplinary actions and letters Mr. Kolar received, discussed *supra* Part III.B.2, described Unified's verification requirement as related to him specifically. Mr. Kolar even testified at his deposition that he understood Unified was requiring him to provide verification for every claim of family leave. Thus, I conclude Unified's oral requests for verification were not inconsistent with OFLA.

Finally, Mr. Kolar argues Unified acted unlawfully in requiring medical verification in relation to his requests for sick-child leave in general. As stated above, OFLA provides that an employer may request medical verification for sick-child leave "*only after* an employee has taken more than three days . . . during any one-year period." Or. Rev. Stat. § 659A.168(2) (emphasis added); Or. Admin. R. 839-009-0260(8). Mr. Kolar argues Unified did not allow him his three "free chances" before requesting medical verification. To the extent he bases this argument on the application of a calendar leave year, it is rejected.[5] But, to the extent he also makes this argument under a roll-back leave year, there is a dispute. The record clearly establishes that

---

[5]In his briefing, Mr. Kolar specifically argued that Unified's request for medical verification for the January 9, 2004 absence was unlawful because it was the first time in the calendar year he had requested family leave.

Mr. Kolar took more than three sick-child leave days within the 12-months preceding his last-chance agreement in September 2003; however, it is unclear when, if ever, he was allowed to take three sick-child leave days without having to provide medical verification. Indeed, some evidence in the record suggests Unified required medical verification every time Mr. Kolar took sick-child leave. *See, e.g.,* Cassidy Decl., Ex. 9 (Letter to Mr. Kolar dated Dec. 16, 2002) ("When taking sick child leave, please provide a doctor's note from your children's health care provider when you are returning to work. After three occurrences, a completed Certification of Health Care Provider form is required."). It may be that Unified properly afforded Mr. Kolar three "free chances" well before the events at issue in this motion occurred, but on the current record, there is a question of fact on this point.

That said, nothing about Unified's possible error here undermines its actions in this case. To begin with, the last-chance agreement, and the events immediately leading up to it, related primarily to Mr. Kolar's dishonesty, not to his failure to provide medical verification. Thus, the basis of the last-chance agreement was valid. Further, whether or not Mr. Kolar was allowed his first three sick-child leave days without having to provide medical verification is not relevant to the events at issue here. Even assuming Mr. Kolar was erroneously required to provide medical verification for his first three sick-child days, nothing about this fact undermines Unified's *subsequent* requests for verification. OFLA provides that the employer is not entitled to request verification for sick-child leave until the employee has taken three such absences in a 12-month period. Therefore, clearly an employee cannot be punished for failing to provide verification for these initial absences. However, I do not read OFLA to also provide that if the employer erroneously requests verification initially, all future requests in relation to subsequent absences

are also invalid. Rather, it is more reasonable to conclude that where the employee is disciplined for failing to provide medical verification for the fourth sick-child absence, or any such absences occurring thereafter, within a 12-month period, the events in relation to the first three absences are no longer relevant.

OFLA balances the competing needs at issue in this context by allowing employees to take their first three sick-child leave days in a 12-month period without providing medical verification, and then after those first three days are used up, allowing the employer to require medical verification for any further sick-child absences. Thus, the employee is not prejudiced by holding that an initial error in requesting verification does not invalidate later requests that would otherwise be valid. To hold otherwise would give employees additional rights from those provided by OFLA–the ability to take more than three medically unsupported sick-child leave days in a year. On the other hand, OFLA allows employers to request verification after an employee takes three days of sick-child leave so that employers can protect themselves from unlawful uses of family leave, and to say that an employer's initial error in requesting leave invalidates all subsequent requests completely undermines this purpose. Thus, I conclude that so long as an employee is not disciplined for failing to provide medical verification in relation to his first three requests for sick-child leave in a 12-month period, any error by the employer in requesting verification before it is entitled to do so does not undermine later requests where it otherwise would be entitled to seek verification. Applying this conclusion to the present case, the record shows Mr. Kolar applied for sick-child leave on more than three occasions within the

12-months preceding the events at issue in this opinion.[6]  And as such, whether or not Mr. Kolar was afforded his three "freebies" is not relevant to the outcome of this case.

### b) Time allowed to provide verification

As previously described, OFLA and its implementing regulations state that an employee must provide medical verification within 15 days of the employer's request.  Or. Rev. Stat. § 659A.168(1); Or. Admin. R. 839-009-0260(2).  Mr. Kolar argues Unified violated this provision when it disciplined him for his December 5 absence without allowing 15 days to pass.  Mr. Kolar was issued a corrective discipline based in part on the December 5 incident on December 12, just seven days later.  Spiegel Decl. Ex. 12.  Thus, to the extent Unified used this incident as a basis for disciplining Mr. Kolar, it acted unlawfully.

### 4) Unified's Termination Decision

Finally, Unified argues it is entitled to summary judgment on the issue of whether it lawfully terminated Mr. Kolar because the record shows that his actions on October 20-21, November 10, and November 14 violated the last-chance agreement.[7]  Because the last-chance agreement was previously found valid, Unified is entitled to summary judgment on this issue if is shown that Mr. Kolar violated the last-chance agreement as a matter of law on at least one of

---

[6]Mr. Kolar admits he took leave on September 2, 2003 to care for Logan, and on September 16 and 17, 2003, to care for Dallas.  Unified also sent Mr. Kolar a letter concerning the absences he took on December 9 and 10, 2003, to care for his sick children.  Cassidy Decl., Ex. 9.  Additionally, Unified's H.R. Director stated in her affidavit that personnel records show Mr. Kolar missed 11 days in 2002, and almost 40 days in 2003, to care for his children.  Cassidy Decl. at ¶ 6.

[7]The other incidents at issue in this case, December 5, 2003, and January 9, 2004, are not addressed in this analysis because as discussed above, Unified erred in using the December absence as a basis for disciplining Mr. Kolar, and there is a question of fact regarding whether Unified specifically requested medical verification in relation to the January absence.

PAGE 17 - OPINION AND ORDER

the instances at issue in this case, thereby giving Unified a lawful basis for terminating him.

### a) October 20-21

On this date, Mr. Kolar left work early on a mandatory overtime day without giving prior notice saying he needed leave to care for Grayson because he was sick. He called into work the next day, just before his shift was to start,[8] saying he would be absent because Grayson was sick and needed to go to the doctor. Unified concluded Mr. Kolar was not entitled to sick-child leave because (1) school records showed Grayson in attendance both days, (2) the medical verification was inadequate, and (3) another family member was available to care for Grayson. Additionally, Unified concluded that the doctor's note indicated that Mr. Kolar was dishonest with Unified in requesting family leave. Mr. Kolar argues the school records are not reliable because they contain errors and they fail to account for unscheduled absences, like snow days. However, none of his arguments suggest an error was made on these specific days.

Regarding the medical verification, as discussed above, the doctor's note only verified Mr. Kolar's statements concerning Grayson's condition. The sum total of the doctor's note is as follows: "Father states patient is ill today and needed to stay home to rest. Father required to attend to his son at home." The doctor further stated in her affidavit that she "cannot verify whether Grayson Kolar was or was not ill on October 20 or 21, 2003," and that her statement to Unified was "based solely on the representations of Mr. Kolar regarding his son's medical status." Grucella Aff. at 2-3. Grayson was not seen or treated by a doctor on either of these days, despite Mr. Kolar's statements to his employer.

---

[8]The record reveals that until January 4, 2004, Mr. Kolar worked the day shift, which started at 8:00 a.m. *See* Cassidy Decl., Exs. 2, 4, and 13. Mr. Kolar's supervisor reported receiving Mr. Kolar's call at 7:20. Schultz Decl., Ex. 5.

Sick-child leave is available whenever a child needs "home care," and there is no requirement that the child receive medical care.  On the other hand, OFLA allows an employer to require medical verification, and whatever else it might include, the information the employee submits must at least meet the general understanding of that term.  *Eisinger v. Fed. Labor Relations Auth.*, 218 F.3d 1097, 1105 (9th Cir. 2000) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotations and citation omitted).  "Verify" means "to establish the truth, accuracy, or reality of." *Merriam-Webster Collegiate Dictionary* 1389 (11th ed.).  Certainly, the best way for a doctor to verify a child's condition is to examine the child.  But there are other ways to give more meaning to this term than was done here.  For example, where a parent relays specific symptoms rather than a generic assertion as to condition, the doctor can medically verify whether or not a person with the listed symptoms requires home care.  In this type of situation, not only is the parent's credibility increased by having to provide specifics, but the doctor is also able to provide additional information from the parent's assertions.  In short, she is able to express a medical opinion.  On the other hand, here, not only was the doctor unable to confirm whether Grayson was sick, she was unable to provide the employer any additional information from Mr. Kolar.  Thus, to conclude this was sufficient medical verification is to render the requirement for such meaningless.

Finally, Unified argues Mr. Kolar was not entitled to sick-child leave because other family members, specifically Grayson's mother and maternal grandmother, were available to care for him.  OFLA's definition of "family member" is stated in terms of the employee's relations, and an employee's ex-mother-in-law is not included.  Or. Rev. Stat. § 659A.150(4); Or. Admin.

PAGE 19 - OPINION AND ORDER

R. 839-009-0210(5).  As for Grayson's mother, Mr. Kolar argues she was not "willing and able to care for the [children]" because of her lifestyle; namely, that she had a recently-released-violent-felon boyfriend living with her and an on-going drug problem.  Or. Admin. R. 839-009-0240(7).  Taking the facts in the light most favorable to Mr. Kolar, these allegations create at least an issue of fact, making summary judgment on this point inappropriate.  *See e.g., Moran v. Weldon*, 57 P.3d 898, 900 (Or. Ct. App. 2002) (granting custody to a biological parent is not appropriate where there is evidence the child would "suffer undue physical or psychological harm in the biological parent's custody") (citation omitted).

In addition to sick-child leave, Mr. Kolar also argues he was also entitled to serious-condition leave for this absence based on the medical certification he provided in November concerning Grayson's on-going health problems.  As described above, the certification established that starting in June 2003, Grayson suffered from "Recent Anaphylactoid purpura," which "can have persistent and/or recurrent [indecipherable] – possibly even renal failure.  Needs periodic routine follow-up as well as on as needed basis."  Spiegel Decl., Ex. 4 at 2.  The doctor specifically indicated this is a chronic condition, but that the proper course of treatment was "unknown" and at the time, a "regimen of continuing treatment" was not required.  *Id.*  Taking the facts in the light most favorable to Mr. Kolar, this certification establishes that Grayson suffered from a serious health condition, on the basis that he has a chronic condition.  Or. Admin. R. 839-009-0210(14)(e) ("'Serious health condition' means an illness, injury, impairment or physical or mental condition of an employee or family member: (e) That results in . . . treatment for a chronic serious health condition that requires periodic visits for treatment by a health care provider, continues over an extended period of time, and may cause episodic rather

than a continuing period of incapacity . . . ."). However, as discussed above, an employee has 15 days to provide medical verification once the employer requests it, and the November 7 certification–besides being completely inadequate–does not come within this time period. Thus, Unified was justified in denying serious-condition leave for this absence.

### b) **November 10**

On this date, Mr. Kolar called in, again just before his shift,[9] saying he needed to take Grayson in for blood and urine tests and would be absent from work. Mr. Kolar's supervisor told him he needed to contact the H.R. department, check-in after the appointment, and possibly come into work for the remainder of his shift, but Mr. Kolar did not follow these instructions. Instead, he took the entire day off. He did provide a doctor's note verifying Grayson's appointment, but Unified denied him leave and disciplined him for this absence finding it was for a routine medical appointment.

An employer does not have to provide sick-child leave for "routine medical or dental appointments." Or. Admin. R. 839-009-0230(4). Likewise, "[s]ubject to the approval of the health care provider, an employee requesting serious-condition leave *shall* make a reasonable effort to schedule medical treatment or supervision at times that will minimize disruption of the employer's operations." Or. Rev. Stat. § 659A.171(3) (emphasis added). FMLA has a similar provision. *See* 29 U.S.C. § 2612 (where need for medical treatment is foreseeable, employee "shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider").

Here, the serious-condition certification clearly stated Grayson only needed "periodic

---

[9]The supervisor noted that he called in at 7:50. Schultz Decl., Ex. 6.

routine follow-up" and "routine labs" so long as he remained stable. Further, in making notes about the conversation with Mr. Kolar on October 20, discussed above, the doctor stated: "Also needs order for repeat urine HSP–how frequent should he be coming for urine & BPV–probably monthly for now." Grucella Aff. Ex. 1. Taken together, these statements clearly indicate Mr. Kolar had the flexibility to schedule Grayson's appointments at times that would minimize disruption to his employer. However, Mr. Kolar has not put forward any evidence that he attempted to do so, and in fact, his actions suggest he did just the opposite. Not only did he not make a "reasonable effort" to schedule around his work obligations, he refused to comply with Unified's request to come into work after the appointment was over, or to even check-in after the appointment was over. Thus, whether analyzing this absence under sick-child leave or serious-condition leave standards, the record shows Unified acted lawfully in disciplining Mr. Kolar for his actions in relation to this request for family leave.

### c) **November 14**

Finally, on November 14, Mr. Kolar again reported that he needed to provide home care for Grayson, and he failed to provide any independent medical verification, apparently relying on the serious-condition certification. It appears Unified based its decision denying Mr. Kolar leave for this absence on its conclusion that Grayson did not have a serious health condition. However, as discussed above, the serious-condition certification was sufficient for purposes of summary judgment to establish that Grayson had a serious health condition. Thus, this was not a proper basis for disciplining Mr. Kolar.

In conclusion, none of the procedural arguments Mr. Kolar raises are sufficient to defeat summary judgment in this case. The closest issue is whether or not Unified acted unlawfully in

requiring him to submit medical verification for his sick-child absences before allowing him

three such absences before requiring verification, but for the reasons discussed above, any error

Unified committed is insufficient to undermine its ultimate termination decision under the last-

chance agreement. Further, Unified has sufficiently established that Mr. Kolar's absences on

October 20-21 and November 10 were in violation of the last-chance agreement and therefore

sufficient bases for his termination. Thus, Unified is entitled to summary judgment on

Mr. Kolar's first claim asserting unlawful employment practice under OFLA.

C.     Wrongful Discharge

Mr. Kolar's second claim is for wrongful discharge. The common-law tort of wrongful

discharge provides a remedy where an employee is discharged for (1) "fulfilling some important

public duty," or (2) "exercising a job-related right that reflects important public policy." *Babick

v. Or. Arena Corp.*, 40 P.3d 1059, 1062 (Or. 2002). The court must look to "constitutional and

statutory provision and case law" to determine whether an important public policy or public duty

is implicated by the facts of the case. *Id.* ("The court must . . . *find* a public duty, not create

one."); *Dunwoody v. Handskill Corp.*, 60 P.3d 1135, 1142 (Or. Ct. App. 2003) (same).

Mr. Kolar argues he was wrongfully terminated for (1) taking care of his children, and (2)

exercising his employment rights under OFLA.

Mr. Kolar is correct a general public policy exists establishing that parents should care

for their children. *See, e.g., Evans v. Evans*, 1157 P.2d 495, 500 (Or. 1945) (Parents "owe[] a

duty to take proper care of the children so that they will ultimately become desirable members of

society"). And this policy is evident in many areas of the law, including OFLA. However,

under the facts of this case, it is unreasonable to conclude Mr. Kolar was terminated *because he*

*was caring for his children*. Rather, the facts show that Mr. Kolar was terminated because he was dishonest with his employer about his children's need for care, and because he failed to follow OFLA's and Unified's procedures for taking family leave, including the obligation to make a reasonable effort to balance his children's needs with his employer's needs. OFLA does not give employees an unqualified right to family leave. Instead, the Act seeks to balance these competing needs by creating rights and obligations for each party. And as the previous discussion indicates, this is simply not a case where "substantial public policy would be 'thwarted' if [the] employer were allowed to discharge its employee without liability." *Babick,* 40 P.3d at 1062. Unified attempted to work with Mr. Kolar over a period of several months in relation to his need for family leave and gave him repeated warnings about the consequences of his behavior and opportunities to change. And instead of working with his employer, Mr. Kolar continued to ignore Unified's instructions and take unexcused absences from work.

Mr. Kolar's argument that he was terminated for exercising his employment rights also fails. In *Yeager v. Providence Health System Oregon*, 96 P.3d 862 (Or. Ct. App. 2004), the court held that OFLA embodies a public policy establishing an employee's right to medical and family leave, and that allegations that an employee was terminated in retaliation for exercising these rights properly states a claim for wrongful discharge. *Id.* at 867. The employee in *Yeager* sought medical leave for her own serious health condition and when she informed her employer that her doctor would not release her to return to work until a week after the date she specified in her request for leave, she was terminated. The employee alleged she was terminated in retaliation for requesting leave. The employer argued she had not properly stated a claim because under the statutory provisions, she was not entitled to the leave requested. The court

ruled the employee had stated a proper claim because of the "public policy at work in allowing retaliation claims for good faith invocation of a statutory right, whether or not that right actually exists." *Id.* at 141.

This case is easily distinguishable. To begin with, in *Yeager*, the employee was terminated based on a single incident of requesting leave, whereas here, Mr. Kolar was terminated after Unified tried to work with him and warn him of the consequences of his continued behavior for months. Further, the facts clearly indicate Mr. Kolar was not terminated *because he exercised his employment rights* under OFLA. Mr. Kolar was not disciplined for requesting leave, he was disciplined for failing to follow proper procedures in applying for family leave and for being dishonest with his employer. And unlike when an employee asserts she is being retaliated against and discriminated against for exercising her statutory right to request leave, public policy is not offended in these circumstances. Indeed, the *Yeager* court recognized that part of the public policy behind OFLA is to accomplish the goals of allowing employee's to take leave and care for their families "in a manner that accommodates the legitimate interests of employers." *Id.* at 141. Mr. Kolar refused to do that in this case, and this is why he was terminated.

D.      <u>Defendant's Attorney's Fees & Costs</u>

Finally, Unified requests its attorney's fees and costs under Or. Rev. Stat. § 659A.885(1). This statute provides that with regard to unlawful employment practices claims, "the court may allow the prevailing party costs and reasonable attorney's fees at trial and on appeal." *Id.* Aside from the issue of whether this statute applies here because the case has not proceeded to trial or appeal, "a court has discretion to allow attorney fees to a prevailing defendant under ORS

PAGE 25 - OPINION AND ORDER

659A.885(1) only when the plaintiff's claim is brought in bad faith or is unreasonable or unfounded.  *Chase v. Vernam*, 110 P.3d 128, 134 (Or. Ct. App. 2005); Or. Rev. Stat. § 659A.885(5)(e)  ("Notwithstanding subsection (1) . . . The court may award reasonable attorney fees . . . incurred by a defendant who prevails only if the court determines that the plaintiff has no objectively reasonable basis for asserting a claim . . . .").  Bad faith exists where the plaintiff's claim is "meritless" or motivated by "something other than the procurement of [a] fair adjudication."  *Mattiza v. Foster*, 803 P.2d 723, 729 (Or. 1990).  Likewise, "[a] court correctly characterizes a [plaintiff's claim] as frivolous, unreasonable, or without foundation when a reasonable lawyer would know that . . . [it] is not well grounded in fact or is not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law."  *McCarthy v. Or. Freeze Dry, Inc.*, 46 P.3d 721, 726 (Or. 2002).  This standard is not met in this case.  The facts presented here are fairly complex, and for the most part, the provisions of OFLA have not yet been addressed by the courts.  Thus, without some indication Mr. Kolar had an improper motive in bringing this case, I reject Unified's request for attorney's fees.

## IV.  Conclusion

For the foregoing reasons, Unified's motion for summary judgment is GRANTED, and its request for attorney's fees is DENIED.

IT IS SO ORDERED.

DATED this ___1st___ day of December, 2005.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge